137 So.2d 615 (1962)
W.B. CLEMENT and Lois Clement, His Wife, Edwin W. Rountree and Bernice Rountree, His Wife, Appellants,
v.
CHARLOTTE HOSPITAL ASSOCIATION, INC., a Corporation Not for Profit, Appellee.
No. 2668.
District Court of Appeal of Florida. Second District.
February 7, 1962.
John M. Hathaway and Walter R. Condon, Punta Gorda, for appellants.
Henderson, Franklin, Starnes & Holt, Fort Myers, for appellee.
WHITE, Judge.
Appellants W.B. Clement and Edwin W. Rountree were defendants in a suit by Charlotte Hospital Association, Inc., to compel conveyance of the title to certain real property claimed by the plaintiff corporation but held in the names of the defendants as trustees. The remaining defendants, the heirs of M.J. Alexander, filed a disclaimer of interest in the subject property and the suit proceeded against the first named defendants and their respective wives. The defendants answered the complaint and the plaintiff filed a motion for summary final decree which was granted. Defendants Clement and Rountree have appealed.
The property in question was deeded on February 23, 1945 by Emily B. Carleton, a *616 widow, to W.B. Clement, Edwin W. Rountree and M.J. Alexander "as trustees for a corporation to be formed for the purpose of erecting, managing and constructing a hospital, of the County of Charlotte * * *." The deed contained the following declaration:
"It is the express condition as a part of the purchase price of this property that the same shall not be used for any other purpose than the erection of and maintenance of a hospital and other buildings incident thereto, and in the event said hospital is not built and/or completed on the property herein within a reasonable period of time, said property is to be deeded back to the party of the first part by the parties of the second part, or by the officers of the corporation that is to be formed upon the party of the first part returning to either of them $1,000.00." (Emphasis ours).
A hospital was constructed on the property in 1946-1947 and it has been in continual operation since that time, although beset with the usual recurring problems. The plaintiff has been the administrative authority of the hospital.
Charlotte Hospital Association, Inc., pursuant to plan, was incorporated in 1945 and the named trustees were on the board of directors. It was originally a corporation for profit but, by charter amendment of 1946, became a nonprofit corporation. The directors lately decided to mortgage the hospital properties in order to finance an expansion program, but trustees Clement and Rountree refused to convey the title to the corporation. Hence this litigation.
The theory of the plaintiff's suit is that the trust provision in the deed to the defendants created only a dry and passive trust which was executed by the Florida Statute of Uses, Fla. Stat. § 689.09 F.S.A.[1] when the corporation was formed and the hospital constructed. The defendant trustees on the other hand asserted that the deed imposed upon them continuing trust duties and that therefore they should continue to hold title to the property.
If the trust provision was intended only to bridge the gap between the date of the deed and the formation of the corporation and construction of the hospital, those events have now occurred and the effect of the statute would be to vest both the legal and the equitable titles in the plaintiff beneficiary. The plaintiff moreover would be entitled to a record showing to that effect. Hamilton v. Flowers, 1938, 134 Fla. 328, 183 So. 811, 816; Bogert, Trusts and Trustees, § 206. The character of the trust, whether active of passive, is dependent upon the time factor and the interpretation of the language of the trust instrument. We are unable to find in the context of the deed any language which imposes active duties and responsibilities upon the trustees after the construction of the hospital. The grantor's declaration, in fact, reflects a contrary intent.
It is noted that the trust portion of the deed provides alternative methods of transferring the property back to the grantor by deed of the trustees or of the officers of the corporation in the event a hospital should not be erected on the property. This indicates that the trust provision was essentially a stop-gap arrangement pending the formation *617 of the corporation and the erection of the hospital. These having been accomplished there was no need for the trustees to continue holding title for the purpose of reconveyance. If the hospital facilities should ever be removed or cease to be utilized for hospital purposes, the possibility of reverter could not be affected by declaring an execution of the trust.
A trust estate is vested in the trustee, but its duration and extent are governed by the requirements of the trust. When no intention to the contrary appears, the trust estate will not be continued beyond the purposes of its creation as set forth in the trust instrument. When these purposes are accomplished, the trust estate ceases to exist and the trustee's title becomes extinct. "The extent and duration of the estate are measured by the objects of its creation." Standard Oil Company v. Mehrtens, 1928, 96 Fla. 455, 118 So. 216. See also McGriff v. McGill, Fla. 1952, 62 So.2d 28; Elvins v. Seestedt, 1940, 141 Fla. 266, 193 So. 54, 126 A.L.R. 1001.
In Bogert, Trusts and Trustees, § 206 at pages 276, 277, the text reads as follows:
"Making the trust active  Not only must the settlor have power to create the trust, manifest an appropriate intent, and satisfy the requirements outlined above with regard to formality, an identified trust res, and a competent cestui que trust, but he must also impose upon the trustee sufficient duties to make the trust an active or special trust, as distinguished from a passive, bare, dry, naked, general trust, or a use. If the trust is to have permanence, not only must words of trust be used, but the terms of the trust must require the trustee to do some positive act, the performance of which by the trustee as such is necessary to carry out the purpose of the settlor."
And further at page 281:
"If the sole purpose of the trust is to vest legal title and possession in the trustee in order that he may pass them on to one or more cestuis que trust, and the trustee is given no discretion as to the type of conveyance or the shares of the conveyees, it may be argued that the trust should be executed as passive as soon as the cestuis become fixed in indentity. The act of passing on ownership and possession may be said to be a mere ministerial formality which should not require a trust for its accomplishment. The interest given by the operation of the Statute of Uses will be as effective as that which would be passed by the trustee's deed, except that the latter may make the grantee's chain of title clearer." (Emphasis ours.)
It was contended on behalf of the defendants that the language of the trust was subject to two reasonable inferences and that the inference favoring the defendants precluded summary judgment. The argument is not well founded since, as we have indicated, there was only one reasonable inference to be drawn. The summary proceedings disclosed no disputed issue of material fact nor any conflict of factual inference that would have justified deferment of decision.
The defenses of laches and estoppel raised by the defendants are likewise untenable. A trust beneficiary or cestui que trust claiming title to the trust estate is not precluded by the passage of time in the absence of circumstances which would require such beneficiary to take timely action as against an asserted adverse title. There was no assertion of adverse title as against the plaintiff until the trustees refused to transfer title as requested. Suit was then instituted. See 21 Fla.Jur., Limitation of Actions, § 99; 12 Fla.Jur., Estoppel and Waiver, § 63.
The final ground urged as ground for reversal is that the chancellor considered matters outside the record. Defendants took exception to the following recitation in the decree:

*618 "After the removal of the said W.B. Clement from the medical staff of said hospital in December of 1960, this case was tried in the newspapers for several weeks. Then on January 13, 1961, this action was brought * * *." (Emphasis ours.)
Inasmuch as the record discloses no indication that the chancellor was actually influenced by matters outside the record, the foregoing statement must be considered gratuitous and superfluous. The final decree emphasized that the whole question in the case was that of rightful ownership and the proper lodgment of title to the subject property. This was a question of law on the unequivocal facts, and that question was rightly determined.
Affirmed
SHANNON, C.J., and SMITH, J., concur.
NOTES
[1] "689.09 Deeds under statute of uses. By deed of bargain and sale, or by deed of lease and release, or of covenant to stand seized to the use of any other person, or by deed operating by way of covenant to stand seized to the use of another person, of or in any lands or tenements in this state, the possession of the bargainor, releasor or covenantor shall be deemed and adjudged to be transferred to the bargainee, releasee or person entitle to the use as perfectly as if such bargainee, releasee or person entitled to the use had been enfeoffed by livery of seizin of the land conveyed by such deed of bargain and sale, release or covenant to stand seized; provided, that livery of seizin can be lawfully made of the lands or tenements at the time of the execution of the said deeds or any of them." (Emphasis ours.)